```
FUGGI LAW FIRM, P.C.
ROBERT R. FUGGI, JR., ESQ.
ATTORNEY ID: 037581992
47 MAIN STREET
P.O. BOX 1808
TOMS RIVER NJ 08753
T: 732-240-9095
F: 732-240-9072
ATTORNEYS FOR PLAINTIFF, K.H.
```

| | |
|---|---|
| K.H.<br><br>Plaintiff,<br><br>v.<br><br>Stockton University; Stockton University Board of Trustees; Leo B. Schoffer; Raymond R. Ciccone; Stanley M. Ellis; Nancy Davis; Madeleine Deininger; Andy Dolce; Michael Jacobson; Nelida Valentin; Meg Worthington; Harvey Kesselman; Susan Davenport; Pi Kappa Phi; Zachary Madle; Jason Soto; Yin Ben Tomm; Amy Tomm; John Does (1-20)(Fictitious Individuals); A-Z OWNER CORPORATIONS (1-20)(Fictitious Corporations)<br><br>Defendant(s). | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action<br><br>Case No.:<br><br>————————<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; PLAINTIFF'S DEMAND FOR DAMAGES; DEMAND FOR ANSWERS TO INTERROGATORIES; AND NOTICE TO PRODUCE |

Plaintiff, K.H. by and through her attorneys, the Fuggi Law Firm, hereby files the following Complaint against Defendants as captioned above.

## PARTIES

1. Plaintiff K.H. is a Stockton University graduate who attended the University and lived on campus from 2011 to 2015 and thereafter graduated.

2. At all material times Plaintiff was attending Stockton University as a student and now maintains a residency in Ocean Grove, NJ 07756.

3. The Defendant Stockton University is located in Galloway Township in Atlantic County, New Jersey, and is a public undergraduate and graduate university of the Arts, Sciences and Professional Studies of the New Jersey state system of Higher Education.

4. At all material times, Defendants Zachary Madle and Jason Soto were students of Stockton University and were associates, pledges, and/or members of the fraternity, Pi Kappa Phi at Stockton University.

5. Defendant Pi Kappa Phi's Zeta Kappa chapter fraternity house is located at 600 W. White Horse Pike, Egg Harbor City, New Jersey 08215.

6. At all material times, defendants Yin Ben Tomm and Amy Tomm, owned the residence at 600 West Whitehorse Pike, Egg Harbor City, New Jersey also known as the Pi Kappa Phi fraternity house.

7. At all material times, the National Chapter of Pi Kappa Phi is headquartered at: 2015 Ayrsley Town Blvd Ste; #200; P.O. Box 240526; Charlotte, North Carolina.

8. At all material times, the Title IX Coordinator of Stockton University was an agent and/or employee of Defendant Stockton

2

University, acting or failing to act within the scope, course, and authority of her employment and her employer to protect the rights of students that had been sexually abused and/or harassed.

9. The Defendant Stockton University Board of Trustees is located in Galloway Township in Atlantic County, New Jersey, and operates dominion and control over Stockton University, a public undergraduate and graduate university of the arts, sciences and professional studies of the New Jersey state system of higher education.

10. Leo B. Schoffer, Raymond R. Ciccone, Stanley M. Ellis, Nancy Davis, Madeleine Deininger, Andy Dolce, Michael Jacobson, Nelida Valentin, Meg Worthington, Harvey Kesselman, Susan Davenport individually compose the Stockton University Board of Trustees which is entrusted to oversee the university and student life inclusive of health, education, safety, and welfare of its student body.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

3

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

**APPLICABLE LAW AND POLICY**

6. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681(a), states that No person in the United States

4

shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

7. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106.

8. 34 C.F.R. §106.8(b) provides: … A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

9. In Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

10. In Davis v. Monroe County Board. of Education, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in Gebser to cases where the harasser is a student, rather than a teacher.

11. Davis held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is a) deliberately indifferent to sexual harassment of which the

5

recipient has actual knowledge, and b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. Davis, 526 U.S. at 1669-76.

12. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1.

## STATEMENT OF FACTS

13. K.H. enrolled as a freshman at Stockton University for the Fall Semester of 2011.

14. Born on September 17, 1993 K.H. was still just seventeen (17) years-old when she first arrived to Stockton University's Freshman Orientation in August of 2011.

15. Plaintiff arrived on campus for freshman orientation on or about August 20, 2011. After arriving to the Stockton University campus, she was placed on the floor below Defendant Assailant Zachary Madle in the Stockton housing.

16. During orientation, K.H. attended many mandatory programs conducted and sponsored by Stockton University.

17. During one such Stockton-organized orientation program regarding sexuality and sex practices, K.H. felt so uncomfortable as to

the themes and crude manner in which sexual subject matters were discussed that she was forced to leave this sexually charged environment sponsored by Stockton University and the Board of Trustees.

18. Shortly after arriving on campus, K.H. was invited to a Pi Kappa Phi party where she met Zachary Madle. The party was hosted by Pi Kappa Phi's Zeta Kappa (Stockton) chapter. He was an associate, pledge, and/or member of the fraternity of this time, but was already taking part in their parties.

19. K.H. would see Madle around campus, because he lived on the floor above K.H. in the Stockton Dorm D. Block. K.H. lived in room D101 of the Freshman dorm.

20. However, K.H. would avoid personal interaction with him because she was not romantically attracted to him and was not interested in having him as a boyfriend.

21. But, at some point between August 20, 2011 and September 17, 2011, Madle attacked and sexually assaulted K.H. in her dorm room. Assailant Madle went into K.H.'s room and attempted to kiss and fondle her breasts and buttocks without consent.

22. K.H. attempted to stop him, but he would not take no for an answer and continued the sexual assault in the Stockton dorm room.

23. Assailant Madle then slammed her against a wall and forced her to kiss him. He also grabbed her breasts and vagina forcefully with his hands while doing so.

24. Eventually, she was able to get him to stop when someone from the door yelled at him to leave her alone.

25. However, that would not be the last time she would be sexually assaulted by Defendant Zachary Madle.

26. In November 2011, K.H. attended a Thursday night Pi Kappa Phi party, notoriously known within the fraternity as "Pussy" Parties with several Stockton University classmates/friends.

27. These fraternity parties were known on campus, because Pi Kappa Phi members would often wear their colors and logos on campus and attempt to recruit female students to attend their parties. One student in particular, "Dan" who was an associate and/or member of Pi Kappa Phi was known around campus as someone who would recruit pledges and girls to the "Pussy" Parties. He would often do so with the enticement of alcohol along with illegal drugs such as MDMA (AKA ecstasy or Molly) and cocaine.

28. At the party of November, as per the norm, Pi Kappa Phi was serving alcohol to students-the majority of whom were underage.

29. Plaintiff K.H. consumed three or four beers during the party, but was not drunk. She was at the party with other fellow Stockton University students.

8

30. After a while, K.H. was no longer interested in attending the party and asked her friend Aaron to take her home. Aaron agreed because he too wanted to go back to dorm.

31. Aaron, who had gone to the party with the Assailant Madle, told Madle he and  K.H. were going home and he joined them. The two of them went back to the dorm together with K.H.

32. After all arrived at the dorm, Aaron headed straight upstairs to his room in D100.

33. Assailant Madle followed K.H. to the entrance and used the same entrance as her.

34. However, Madle, instead of heading to his floor, followed K.H. into her room.

35. After following K.H. into her room he then raped and sexually assaulted her. He grabbed K.H. and threw her onto her bed. He stood over her and held her arms in order to get her pants and underwear off. After taking off his own pants, he then mounted her in an attempt to rape her by vaginally penetrating her with his penis. He then began violently attempting to jam his penis inside K.H., but he was too flaccid and he could not initially penetrate her. So he began to kiss her forcefully in order to further arouse himself. During this entire ordeal K.H. repeatedly told Madle to "Stop!" After several failed attempts he finally penetrated K.H. When he was done, he left.

9

36. After the rape and sexual assault by Madle, for which he never apologized, K.H. informed her friends the next morning that he had sexually assaulted and raped her. However, none of them reported it to the school or encouraged her to do so.

37. Soon after the rape occurred, rumors stemming from Pi Kappa Phi began circulating around campus. And people, especially Pi Kappa Phi members, began demeaning K.H. by referring to her as "Madle" or "Madle's wife" when they would pass her on campus. As one can imagine, this made K.H.'s social life extremely difficult.

38. As a result of the sexual harassment and rape K.H. began undergoing therapy twice a week. She began to suffer the effects of bulimia.

39. Unfortunately, despite the two assaults at the hands of Zachary Madle, K.H. would undergo the horrors of sexual assault one more time during her Stockton University academic career.

40. In 2014, during K.H.'s junior year, while attending a Pi Kappa Phi sorority/fraternity "mixer" party, K.H. was assaulted by Pi Kappa Phi associate and/or member Jason Soto.

41. Jason Soto was a member/associate of Pi Kappa Phi who was also serving as the Pi Kappa Phi party D.J. on the night in question.

42. K.H. attended the party with seven other girl friends who were all members of the sorority to which K.H. had become a member.

43. During the party, Pi Kappa Phi was serving their infamous "Jungle Juice" which was served to the girls in red plastic

10

cups. It is believed that the "Jungle Juice" was spiked with very hard alcohol or perhaps drugs.

44. Drinking her first cup of jungle juice is the last memory K.H. has of the party. She thereafter was unconscious.

45. K.H. awoke the next morning with a sore vagina. She feared that someone had spiked her drink and sexually assaulted her, again.

46. That same morning, the eight Stockton University women who attended the party all said: "What happened last night?" Most all of the girls had thrown up extensively and few had any recollection of the previous night-leading them to believe they had been drugged.

47. As the group of young women began to discuss and piece together the events of the party, one of the girls told K.H. "You were in the bathroom having sex with Jason (Soto). Don't you remember?" But K.H. did not remember and could not have consented to the act.

48. K.H. also learned that after Jason Soto was done sexually assaulting and raping K.H. in the bathroom, he then pulled another girl, S.J. into the bathroom and began sexually assaulting her as well. It is believed both girls were intoxicated to the point that any ability to consent was impossible and therefore any sexual act was sexual assault and/or rape.

49. Later, K.H. encountered Jason Soto on campus and she approached him. They spoke in regards to their "sexual encounter" A.K.A his sexual assault. K.H. replied to him "I don't remember having sex with you." To which he responded: "Really? Wow, you must have been really drunk!" He also informed her that he did not use a condom. This is an admission that he sexually assaulted K.H. without her consent.

50. The eight young women who attended the party did speak with other female students regarding their being drugged at the Pi Kappa Phi party. But no one ever reported the incident to Stockton University.

51. Stockton University and the Board of Trustees were well aware of the operation of the Pi Kappa Phi fraternity. They gave the fraternity de facto approval and allowed them to host and recruit Stockton University students despite the fraternity supposedly being officially unrecognized by Stockton University.

52. K.H. has undergone substantial trauma and damage from the assaults and has been undergoing therapy fairly regularly.

53. With the help of therapy, K.H. was able to graduate from Stockton University in 2016.

54. However, it was not until November 2017 that she was capable of discussing these incidents specifically with her therapist and began to understand the effects it has had on her well-being.

**COUNT ONE**

**VIOLATION OF TITLE IX AS TO DEFENDANT STOCKTON UNIVERSITY (20 U.S.C. §1681, et seq.) (Retaliation by Withholding Protections Otherwise Conferred by Title IX)**

1.  Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

2.  Stockton University had reassured all members of the student body that they would protect and investigate any and all sexual assaults **regardless of whether or not the matter was referred to law enforcement.**

3.  Once a victim of sexual abuse insists upon involving law enforcement for a criminal investigation, the University instead retaliates against victims by: declining to investigate their matter, failing report all instances of sexual abuse, or to otherwise failing to comply with their responsibilities as mandated by Title IX.

4.  Stockton University has been continually on notice as a result of past incidents which have involved rape, sexual assault, and underage drinking. But Stockton has declined to intervene to prohibit this conduct for the benefit and safety of its student body. As such, the university was complicit in these actions.

    WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

13

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT TWO**

**VIOLATION OF TITLE IX AS TO STOCKON UNIVERSITY (20 U.S.C. §1681, et seq.) (The School's Deliberate Indifference to Alleged Sexual Harassment)**

5.  Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

6.  The sex-based sexual assaults and sexual harassment articulated in the Plaintiff's general allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

14

7. The Defendant University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) ("Title IX"), because a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault by a fellow student; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by the University's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

8. Defendant Stockton University and its officials had actual and constructive knowledge of the sexual assault and the resulting sexual harassment of Plaintiff. This was created by Stockton's failure to investigate and discipline Plaintiff's attacker in a timely manner consistent with its own policy and federal and state law.

9. The Defendant Stockton University's failure to promptly and appropriately respond to the alleged sexual assaults and sexual harassment resulted in Plaintiff, on the basis of her sex, being excluded from participating in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

10. Defendant Stockton University failed to take immediate, effective remedial steps to resolve the complaints of s sexual

assaults and sexual harassment and instead acted with deliberate indifference toward Plaintiff.

11. Defendant Stockton University persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

12. Defendant Stockton University engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated and fully reported.

13. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

14. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under Title IX.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to

16

prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT THREE
### 1983 VIOLATION AS TO DEFENDANTS STOCKON UNIVERSITY,
### (42 U.S.C. §1983)

15. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

16. Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

17. Defendants Stockton Employees were all state actors acting under the color of state law.

18. Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate the sexual assaults and sexual harassment of the Plaintiff and failing to appropriately

discipline the assailants; failing to adequately train and supervise Stockton Employees; and manifesting deliberate indifference to the sexual assaults and sexual harassment of Plaintiff by the assailants.

19. Stockton University has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against Stockton University students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

20. On information and belief, the University has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other Stockton University students.

21. The University's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

22. Defendant Stockton University and Stockton University Board of Trustees are or were at the time of events complained of within, policymakers for the purpose of implementing the University's unconstitutional policies or customs.

23. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT FOUR

**LIABILITY FOR FAILURE TO TRAIN, SUPERVISE, AND PROTECT STUDENTS FROM SEXUAL ASSAULT AS TO DEFENDANT STOCKTON UNIVERSITY (42 U.S.C. §1983)**

24. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

25. Defendant Stockton Employees, were "state actors" working for Stockton University, a federally funded school system.

26. Defendant Stockton Employees acted under "color of law" when refusing to respond to Plaintiff's sexual assault on school premises.

27. Defendant Stockton Employees failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

28. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

29. Defendant Stockton Employees should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

30. Defendant Stockton Employees each violated Plaintiff's right to equal access by:

a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

c. Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d. Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f. Failing to notify both parties of the outcome of the complaint.

31. Defendant Stockton University violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

32. These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

33. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant Stockton University's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT FIVE**
**VIOLATION OF THE JEANNE CLERY DISCLOSURE OF CAMPUS SECURITY POLICY AND CAMPUS CRIME STATISTICS ACT (CLERY ACT)**

34. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

35. The Clery Act, passed in November 1990, requires that higher education institutions whose students receive federal financial aid collect and report crime data to the U.S. Department of Education.

36. A 1992 amendment to the Clery Act established the Campus Sexual Assault Victims' Bill of Rights, requiring schools to provide certain basic rights to survivors of sexual assaults on campus, include:

   A. Giving the alleged victim and the alleged assailant equal opportunity to have others present in disciplinary proceedings and equal notification of the outcome of such proceedings;

   B. Notifying alleged victims of the availability of counseling services, and of their right to pursue remedies through local police;

   C. Notifying alleged victims that they have the option of changing classes and dormitory assignments in order to avoid their alleged assailants;

23

37. The Clery Act requires colleges and universities to do the following with regards to sexual assault reports: 1) Publish an Annual Security Report; 2) Disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities; 3) Issue timely warnings about Clery Act crimes which pose a serious or ongoing threat to students and employees; and 4) Devise an emergency response, notification, and testing policy.

38. Defendant Stockton University failed to disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities;

39. Defendant Stockton University failed to issue timely warnings about crimes such as those involving Pi Kappa Phi, which posed a serious and ongoing threat to students that Stockton University allowed to occur.

   **WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to

24

prevent sex-based discrimination and harassment, including
sexual assault, in its education programs; fully investigate
conduct that may constitute sex-based harassment and/or sexual
assault; appropriately respond to all conduct that may
constitute sex-based harassment and/or sexual assault; and
mitigate the effects of harassment and/or assault including by
eliminating any hostile environment that may arise from or
contribute to it; statutory interest; costs; and reasonable
attorney fees.

## COUNT SIX
### VIOLATION OF REPORTING UNDER THE CLERY ACT 34 C.F.R. 668.46

40. Plaintiff repeats and reiterates all of the allegations
    contained in the previous counts and/or paragraphs as if set
    forth at length herein.

41. Under the Clery Act, Stockton University is a participant in
    Title IV, HEA programs and must prepare, publish, and distribute
    an Annual Security Report (ASR) by October 1 of each year.

42. Stockton University failed to fully and accurately provide
    information as it relations to a description of the institutions
    campus security policy and protocol pursuant to 34 C.F.R. 668.46
    (b).

43. Stockton has filed to account and properly detail:

    a. A list of the title of each person or organization to whom
       students and employees should report criminal affairs for

the purpose of making timely warning reports and annual statistical timeline.

b.   A statement of policy and protocol concerning the monitoring and reporting through local police agencies of criminal activity in which students engage at off-campus locations of student organizations including student off-campus housing facilities.

c.   Notification to students that Stockton University will change a victim's academic and living situations after an alleged sexual offense and options will be available for victims.

d.   Stockton University failed to properly report crime statistics of the occurrence of certain crimes on campus or off-campus buildings or private and public property i.e. Pi Kappa Phi fraternity house pursuant to 34 C.F.R. 668.46 (d)

e.   Stockton University failed to properly and completely compile and publish crimes inclusive of sex offenses (forcible and non-forcible), robbery, assaults, burglary, liquor law violations inclusive of underage drinking, and drug law violations.

f.   Stockton University failed to notify and provide current students, incoming students, and applicants for admission with accurate, complete, and timely information about crime and safety on campus in violation of 34 C.F.R. 668.46 (e).

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT SEVEN**
**STOCKTON UNIVERSITY'S VIOLATION OF COMPLIANCE WITH THE CLERY ACT INLCUDED VIOLATIONS OF THE HEA HIGHER EDUCATION ACT OF 1965**

44. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

45. Stockton University violated the terms and guidelines of the Clery Act, which included violations the HEA of Departments

27

regulations when it did not give an emergency notification to its students and employees after Stockton University officers learned of the allegations of sexual assault from 2014.

46. Stockton University lacked the administrative capability required to comply with the Clery Act and HEA regulations and failed to properly notify students and incoming students of the sexual assaults.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT EIGHT**

**STOCKTON UNIVERSITY FAILED TO ISSUE AN EMERGENCY NOTIFICATION AFTER EACH PARTICULAR SEXUAL ASSAULT ONCE STOCKTON OFFICIALS LEARNED OF THE ALLEGED SEXUAL ABUSE ALLEGATIONS COMMITTED BY STOCKTON STUDENTS**

47. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

48. Stockton University failed to issue an emergency notification after it determined that Pi Kappa Phi was a danger to the Stockton University Student Body.

49. Pi Kappa Phi continued to fully function and recruit Stockton University Students after it became an unrecognized fraternity and maintained a significant and regular presence on the Stockton University campus.

50. Pi Kappa Phi held itself out as a Stockton University fraternity, with Stockton University students as its exclusive members who were granted full access to Stockton University facilities and campus.

51. Stockton University had significant evidence prior to 2010 that Pi Kappa Phi posed a danger to the campus community, student body, and incoming students and took no action against its student members.

52. Stockton University allowed its students to partake in fraternity conduct that was detrimental to the health, education, and welfare of the Stockton University student body.

53. Stockton University took minimal and unsuccessful efforts to warn the campus community about the potential risks posed by Pi Kappa Phi and its members and associates in violation of the Clery Act reporting provisions.

54. The emergency notification would have informed the campus community and student body as well as incoming students that there was and is a dangerous situation involving an immediate threat to the health, safety, and welfare of the Stockton University Student Body.

55. Stockton University has not provided a reasonable explanation for not issuing such a warning.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by

eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

COUNT NINE

**STOCKTON UNIVERSITY FAILED TO ADMINISTER PROGRAMS UNDER TITLE IV (HEA) PROGRAMS IN ACCORDANCE WITH STATUTORY AND REGULATORY PROVISIONS UNDER AUTHORITY OF TITLE IV OF THE (HEA) 34 C.F.R. 668.16.**

56. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

57. Stockton University violated the directives and statutory requisites of the statue by not:

   a. Employing an adequate number of qualified staff to administer the program with appropriate checks and balances pursuant to 34 C.F.R. 668.16 (c)(1).

   b. Stockton University failed to properly document and maintain proper records to support crime statistics in its ASR and did not match the crime statistics it submitted to the U.S. Report of Education.

   c. Stockton University failed to properly retain data it had submitted to the U.S. Report of Education for the years: 2015, 2016, 2017,and 2018. Stockton University failed to be in full compliance with reporting statute.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TEN
**STOCKTON UNIVERSITY FAILED TO PROVIDE THE STATUTORILY REQUIRED ACCURATE AND COMPLETE WRITTEN DESCRIPTION OF LEGAL SANCTIONS IMPOSED UNDER LOCAL, STATE AND FEDERAL LAW FOR THE UNLAWFUL POSSESSION OF DISTRIBUTION OF ILLICIT DRUGS AND ALCOHOL TO UNDERAGE MINORS FOR THE YEARS 2010 THROUGH 2018**

58. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

59. As a part of Stockton University's participation on the Title IV and HEA programs, Stockton University is required to provide detailed information to the student body as it relates to the distribution and/or consumption of illicit drugs and alcohol dispensed to minors on the campus as well as at off campus housing to protect the health, education, and welfare of the Stockton University Student Body.

60. Stockton University did not provide to the student body a written code or cohesive plan for ensuring compliance with the Clery Act.

61. Stockton University failed to have a cohesive policy concerning the monitoring and recording through local police agencies of criminal activity, illicit drug and/or underage alcohol consumption of it students at a known location of Pi Kappa Phi and other various locations on and off campus.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT ELEVEN
**STOCKTON UNIVERSITY DID NOT PROPERLY CLASSIFY SEXUAL INCIDENTS FOR PURPOSES OF THE CLERY ACT AND DID NOT PROPERLY COMPILE AND DESCRIBE THE TRUE CRIME STATISTICS IN ORDER TO UNDER REPORT CLERY ACT CRIMES**

62. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

63. Stockton University failed to comply with the Clery Act and the Department of Education's regulations for institutions participating in Title IV (HEA) programs which must include in its ASR statistics of certain reported crimes and arrest involving campus disciplinary referrals for alcohol and drug violations.

64. The statistics must be disclosed by location including on campus or on non-campus building or property, and on public property pursuant to C.F.R. 668.46(a) and 668.46(c)(1)-(c)(4).

65. Stockton University failed to comply with the required crime statistics using the definitions of crimes provided by the Department's regulations and the Federal Bureau of Investigations Uniform Crime Reporting (UCR). Additionally, Stockton University failed to comply with hate crime data collection guidelines and training guidelines for hate crime data collection pursuant to 34 C.F.R. 668.46(c)(7) and failed to include the violations of Pi Kappa Phi in its reporting.

66. Stockton University failed to properly publish and distribute the information on its website and provide accurate supporting data, which thereby makes the mandatory reporting of the Annual Security Report (ASR) inaccurate.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and

mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWELVE
**STOCKTON UNIVERSITY DID NOT COLLECT CRIME STATISTICS FROM ALL REQUIRED SOURCES AND FAILED TO INCLUDE THEM IN THE ASR STOCKTON UNIVERSITY PREPARED AND SUBMITTED**

67. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

68. Under the Clery Act, institutions participating in the Title IV HEA programs must prepare, publish, and distribute an accurate ASR by October 1 of each year pursuant to 34 C.F.R. 668.1(e).

69. An institution must include in its statistics any crime reported to a CSA and the crime must be included in the statistics for the year in which it was reported to a CSA pursuant to C.F.R. 668.46(c)(2).

70. A CSA is any official of the institution who has significant responsibility for student and campus activities, including but not limited to student housing, student discipline, and campus judicial proceedings pursuant to C.F.R. 668.46(a).

71. The crime statistics Stockton University reported on its ASR reports do not match the crime statistics that actually occurred on Stockton University's campus including dormitories and other

residential facilities in or on off-campus buildings or public property pursuant to 34 C.F.R. 668.46(a), 668.46(c)(1)-(c)(4).

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT THIRTEEN
**THE DRUG FREE SCHOOLS AND COMMUNITIES ACT AMENDMENT OF 1989 (DFSCA) AS REFLECTED IN 34 C.F.R. 86 MANDATES THE PUBLICATION OF ILLICIT DRUGS AND ALCOHOL PREVENTION PROGRAMS AND DISCLOSURE OF SANCTIONS FOR VIOLATIONS OF CODE OF CONDUCT**

72. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

73. The DFSCA and the Department of Education require institutions of higher education to adopt and implement a drug and alcohol prevention program for its students which at a minimum includes the annual distribution in writing to each student and to advise each student when in taking one or more classes for any type of academic credit standard of conduct that clearly prohibits the unlawful possession and distribution of illicit drugs and alcohol by its students.

74. Congress intended for the Drug Free Schools and Communities Act Amendment of 1989 (DFSCA) to ensure that students had vital information about drug and alcohol prevention at the institution of Stockton University.

75. Stockton University failed to advise and give its present and incoming students vital information regarding drug and alcohol prevention at the institution.

76. Stockton University failed to advise the student body about drug and alcohol prevention that would have helped them to understand the standards and codes of conduct expected of them and fraternity organizations such as Pi Kappa Phi with regard to illicit drug and alcohol use and possible sanctions, suspensions, and expulsions that could be imposed for violations of its student code of conduct.

   WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for

Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT FOURTEEN
### SEXUAL ASSAULT/SEXUAL ABUSE

77. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

78. At all times relevant, the assailants were Stockton University students and/or a pledges/members/associates of Pi Kappa Phi fraternity who was present on or about Stockton University's campus.

79. On more than one occasion, various assailants engaged in unlawful sexual contact with the plaintiff without her consent.

80. All Defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm and/or offensive contact to the Plaintiff K.H. and thereby put her in imminent apprehension and fear for her well-being.

81. All Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

82. Plaintiff did not and could not consent to the acts, and any purported consent was secured through violence, fraud, deception and undue influence, coercion and duress thereby rendering it void.

83. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

84. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

85. All defendants are responsible for sexual assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by

eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT FIFTEEN
## AGGRAVATED ASSAULT

86. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

87. At all times relevant, the assailants were Stockton University pledges/members/associates of Pi Kappa Phi fraternity who were present on or about Stockton University's campus.

88. On at least one occasion, assailants engaged in unlawful sexual contact with the plaintiff without her consent.

89. Defendants attempted to cause serious bodily injury to plaintiff purposely, knowingly, or under circumstances manifesting an extreme indifference to the value of human life.

90. Defendants attempted to cause significant bodily injury to plaintiff knowingly, under circumstances manifesting extreme indifference to the value of human life, or recklessly to cause such significant bodily injury.

91. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus;

42

difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

92. All defendants are responsible for aggravated assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the aggravated assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive

relief requiring Defendant University to take effective steps to
prevent sex-based discrimination and harassment, including
sexual assault, in its education programs; fully investigate
conduct that may constitute sex-based harassment and/or sexual
assault; appropriately respond to all conduct that may
constitute sex-based harassment and/or sexual assault; and
mitigate the effects of harassment and/or assault including by
eliminating any hostile environment that may arise from or
contribute to it; statutory interest; costs; and reasonable
attorney fees.

## COUNT SIXTEEN
## SEXUAL BATTERY

93. Plaintiff repeats and reiterates all of the allegations
contained in the previous counts and/or paragraphs as if set
forth at length herein.

94. At all times relevant, the assailants were Stockton University
students and/or a pledge or member of Pi Kappa Phi fraternity
who was present on or about Stockton University's campus.

95. On at least one occasion, assailants engaged in unlawful sexual
contact with the plaintiff without her consent.

96. During the relevant times alleged herein assailants
purposefully, knowingly, intentionally, carelessly, recklessly,
and negligently caused harm to plaintiff, K.H. by an act of

44

sexual contact or sexual penetration for sexual gratification by duress and force.

97. During the relevant times alleged herein assailants J purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexual contact, by an intentional touching, either directly or through clothing, of the plaintiff K.H.'s intimate parts for the purpose of sexually arousing or sexually gratifying the assailants by duress and force.

98. During the relevant times alleged herein assailants purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by an act of sexual contact or sexual penetration between the plaintiff and assailants for sexual gratification by duress and force.

99. During the relevant times alleged herein assailants purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexually contacting, battering, harassing, touching, penetrating plaintiff, K.H. for sexual gratification by duress and force.

100. During the relevant times alleged herein, assailants grabbed and groped the plaintiff for the purpose of sexually arousing or gratifying assailants.

101. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical

injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

102. All defendants are responsible for sexual battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in

response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT SEVENTEEN
### CIVIL BATTERY

103. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

104. At all times relevant, the assailants were Stockton University students and/or a pledge or member of Pi Kappa Phi fraternity who was present on or about Stockton University's campus.

105. On at least one occasion, assailants engaged in unlawful sexual contact with the plaintiff without her consent.

106. Defendants caused actual harmful and offensive touching of Plaintiff with the intent to cause offensive touching of Plaintiff.

47

107. Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

108. Plaintiff did not consent and could not consent to the touching which was against her will. Any failure to report the incidents was the result of overwhelming mental duress, undue influence and coercion.

109. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

110. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

111. All defendants are responsible for Civil Battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

COUNT EIGHTEEN

**SEXUAL ABUSE AND VIOLATION OF N.J.S.A. 2A:61B-1 AS TO DEFENDANT ZACHARY MADLE**

112. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

113. At all times relevant hereto, Plaintiff K.H. was a resident of the State of New Jersey, and student enrolled at Stockton University.

114. At all times relevant to the matter of Plaintiff's first sexual assault at the hands of Zachary Madle which took place between August 20, 2011 and September 17, 2011, while K.H. was still a 17-year old minor.

115. During plaintiff K.H.'s freshman year, she was placed in the Stockton University dormitory housing

116. K.H. did not disclose and understand her sexual abuse and its effects on her until a counseling session with her therapist only recently.

117. Pursuant to N.J.S.A. 2A:61B-1:

> In any civil action for injury or illness based on sexual abuse, the cause of action shall accrue at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse. Any such action shall be brought within two years after reasonable discovery.
> c. Nothing in [the Child Sexual Abuse Act] is intended to preclude the court from finding that the statute of limitations was tolled in a case because of the plaintiff's mental state, duress by the defendant, or any other equitable grounds. (Emphasis added).

50

Plaintiff pleads delayed discovery of the knowledge that K.H. was a victim of sexual assault and of the harm inflicted and thus a delay in the accrual of her claims against all parties. Plaintiff contends that the Statute of Limitations shall be tolled in accordance with the laws of the State of New Jersey, including, but not limited to, N.J.S.A. 2A:61B-1, et seq. (reasonable discovery of the injury and its causal relationship to the act of sexual abuse hereinafter referred to as "delayed discovery"), and/or N.J.S.A. 2A:14-21, et seq. (mental state, insanity and/or lacking the ability and/or capacity due to mental infliction, to pursue Plaintiff's lawful rights), and/or duress, and/or equitable grounds.

118. Incidents of abuse include, but are not limited to, the one which occurred between August 20, 2011 and September 17, 2011. Defendant Zachary Madle engaged in sexual physical contact with the plaintiff while she was a minor.

119. Defendants Zachary Madle and Jason Soto acted carelessly, recklessly, negligently, and grossly negligent, and caused harm to Plaintiff K.H. by sexually molesting, contacting, battering, harassing, touching and fondling Plaintiff K.H. by duress and force. These acts complained of above constitute a violation of N.J.S.A. 2A:61B-1.

120. Between August 20, 2011 and September 17, 2011, defendant Zachary Madle touched Plaintiff directly and/or through Plaintiff's clothing on the plaintiff's intimate parts for the purpose of sexually arousing or gratifying himself in violation of N.J.S.A. 2A:61B-1.

121. As a direct and proximate result of the conduct described herein by Zachary Madle and Jason Soto, Plaintiff has suffered physical injury; severe emotional distress; diminished enjoyment of life; diminished enjoyment of childhood; difficulty and an inability to focus; difficulty and an inability to perform educational tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; is and has not engaged in normal development and activities; suffers from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, making it difficult to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

122. The actions of defendants Zachary Madle and Jason Soto as alleged herein shattered the natural human trust inherent in a minor's relationship with peers and colleagues, thereby causing and contributing to psychological injuries to Plaintiff, necessitating the need for future psychological care and treatment, resulting in loss of earnings and loss of future earning capacity and was caused to sustain other great losses all contributing to her damages in dollar sum subject to proof at the time of trial.

WHEREFORE, Plaintiff K.H. hereby demands judgment against defendants Zachary Madle and Jason Soto for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the court or jury may deem proper.

### COUNT NINETEEN

SEXUAL ABUSE AND VIOLATION OF N.J.S.A. 2A:61B-1 AS TO DEFENDANTS STOCKTON UNIVERSITY, STOCKTON UNIVERSITY BOARD OF TRUSTEES: LEO B. SCHOFFER, RAYMOND R. CICCONE, STANLEY M. ELLIS, NANCY DAVIS, MADELEINE DEININGER, ANDY DOLCE, MICHAEL JACOBSON, NELIDA VALENTIN, MEG WORTHINGTON, HARVEY KESSELMAN, JOHN DOES 1-20, AND A-Z CORPORATIONS 1-20; STANDING *IN LOCO PARENTIS* AS PROSCRIBED BY N.J.S.A. 2A:61B-1

1. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

2. Pursuant to N.J.S.A. 2A:61B-1:

> 'Sexual abuse' does not only include an act of sexual contact or sexual penetration between a child under the age of 18 years

and an adult, [but also makes liable other persons] standing *in loco parentis* within the household who knowingly permit[s] or acquiesce[s] in sexual abuse by any other person also commits sexual abuse.

Because defendants Stockton University, Stockton University Board of Trustees: Leo B. Schoffer, Raymond R. Ciccone, Stanley M. Ellis, Nancy Davis, Madeleine Deininger, Andy Dolce, Michael Jacobson, Nelida Valentin, Meg Worthington, Harvey Kesselman, john does 1-20, and a-z corporations 1-20, stood *in loco parentis* to Plaintiff and knowingly permitted and/or acquiesced in the sexual abuse by defendant Zachary Madle as described herein, defendants Stockton University, Stockton University Board of Trustees: Leo B. Schoffer, Raymond R. Ciccone, Stanley M. Ellis, Nancy Davis, Madeleine Deininger, Andy Dolce, Michael Jacobson, Nelida Valentin, Meg Worthington, Harvey Kesselman, john does 1-20, and a-z corporations 1-20 committed sexual abuse of Plaintiff, in violation of N.J.S.A. 2A:61B-1.

3. As a direct and proximate result of the conduct described herein above, Plaintiff has suffered physical injury; severe emotional distress; diminished enjoyment of life; diminished enjoyment of childhood; difficulty and an inability to focus; difficulty and an inability to perform educational tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; is and has not engaged in normal development and activities; suffers from

behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in his full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, making it difficult to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

4. The actions of defendants Zachary Madle, Stockton University, Stockton University Board of Trustees: Leo B. Schoffer, Raymond R. Ciccone, Stanley M. Ellis, Nancy Davis, Madeleine Deininger, Andy Dolce, Michael Jacobson, Nelida Valentin, Meg Worthington, Harvey Kesselman, john does 1-20, and a-z corporations 1-20, as alleged herein shattered the natural human trust inherent between classmates, thereby causing and contributing to psychological injuries to plaintiff, necessitating the need for future psychological care and treatment, resulting in loss of earnings and loss of future earning capacity and was caused to sustain other great losses all contributing to his damages in dollar sum subject to proof at the time of trial.

5. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm

to plaintiff K.H. by allowing or perpetuating sexual assault of a minor.

**WHEREFORE,** Plaintiff hereby demands judgment against defendants Stockton University, Stockton University Board of Trustees: Leo B. Schoffer, Raymond R. Ciccone, Stanley M. Ellis, Nancy Davis, Madeleine Deininger, Andy Dolce, Michael Jacobson, Nelida Valentin, Meg Worthington, Harvey Kesselman, john does 1-20, and a-z corporations 1-20, for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the court or jury may deem proper.

### COUNT TWENTY
### FALSE IMPRISONMENT

123. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

124. At all times relevant, the assailants were Stockton University students and/or a pledge or member of Pi Kappa Phi fraternity who was present on or about Stockton University's campus.

125. On at least one occasion, assailants engaged in unlawful sexual contact with the plaintiff without her consent.

126. At all times relevant hereto, while assailants perpetrated their sexual battery, sexual assault, battery and assault, of the plaintiff, the assailants knowingly restrained Plaintiff

56

unlawfully, interfering substantially with her liberty then sexually assaulted her.

127. The circumstances under which defendant restrained the Plaintiff exposed her to risk of serious bodily injury.

128. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

129. All defendants are responsible for false imprisonment of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be

caused great harm to plaintiff by allowing the false imprisonment of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-ONE
## INVASION OF PRIVACY

130. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

131. Defendants intentionally intruded upon the plaintiff physically or otherwise, upon the solitude or seclusion of her private affairs or concerns, which was highly offensive to a reasonable person. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982) (quoting Restatement (Second) of Torts, supra, §652B).

132. Plaintiff possessed a reasonable expectation of privacy while attending school at Stockton University.

133. Defendant Stockton University failed to provide reasonable accommodations for the Plaintiff K.H. as she was a resident on campus.

134. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others

has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

135. All defendants are responsible for Plaintiff's invasion of privacy. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the invasion of the plaintiff's privacy.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-TWO
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

136. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

137. At all times relevant, the assailants were Stockton University students and/or a pledge or member of Pi Kappa Phi fraternity who was present on or about Stockton University's campus.

138. On at least one occasion, assailants engaged in unlawful sexual contact with the plaintiff without her consent.

139. Assailant by duress and intimidation, caused Plaintiff to engage in sexual contact with them, which included the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of assailants.

140. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

141. Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would

result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

142. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

143. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

144. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted

carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through intentional infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-THREE
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

145. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

146. At all times relevant, the assailants were Stockton University students and/or a pledge or member of Pi Kappa Phi fraternity who was present on or about Stockton University's campus.

147. Assailants by duress and intimidation, caused Plaintiff to engage in sexual contact with them, which included the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of assailants.

148. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

149. Defendants acted carelessly, negligently, or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

150. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

151. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus;

difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

152. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive

relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-FOUR
### NEGLIGENT HIRING

153. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

154. Defendant Stockton University entrusted Defendants Stockton Employees who hired Defendants Stockton Employees.

155. Defendant Stockton University, as an employer, at the time of hiring employees, Defendant Stockton Employees, had reason to believe, or could have determined by reasonable investigation, that Stockton University students were dangerous and Stockton Employees were ill-equipped to handle perform their duties and hired them anyway, which proximately caused injury to K.H. DiCosala v. Kay, 91 N.J. 159, 173-74 (1982).

156. Defendant Stockton University as an employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the Stockton Employees that allowed assailants to sexual harass and assault K.H.

157. Defendants Stockton Employees allowed a risk of harm that was foreseeable and carelessly, negligently, and recklessly disregarded.

158. Defendant Stockton University and Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by assailants.

159. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others

has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-FIVE
## NEGLIGENT SUPERVISION

160. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

161. Defendants Stockton University and Stockton University Employees, were hired and chosen by Defendant Stockton University to protect its student body.

162. Stockton University, Stockton Employees, accepted the responsibility of protecting the student body from harm.

163. Stockton University, Stockton Employees, managers, training staff, and/or supervisors failed to properly monitor the defendant employees. Based on external factors and the entirety of the circumstances, a reasonable person would expect safer level of supervision and protection of its student body.

164. Plaintiff sustained injuries, which was a direct result of the failure to supervise and protect the student body.

165. Defendants Stockton University and Defendant Stockton Employees in their roles failed to maintain and implement a practical sexual abuse/harassment policy, which is evidenced by the failures of Stockton employees and Stockton students to report sexual harassment and assault and protect against it.

166. A reasonable employee could have prevented this incident from coming to fruition and prevented it from happening and/or would have reported the sexual abuse once gaining knowledge of it.

167. If there was proper supervision, plaintiff would not have been sexual harassed and assaulted by assailants.

168. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

169. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly

negligent, and caused or allowed to be caused great harm to plaintiff by failing to supervise their employees the Defendants Stockton Employees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-SIX
### NEGLIGENT RETENTION

170. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

71

171. At all times relevant, the assailant was a Stockton University student and/or a member of Pi Kappa Phi fraternity who was present on or about Stockton University's campus.

172. Defendant Stockton University employees were aware of Stockton Employees and assailants dangerous propensities and failed to act.

173. Defendant Stockton University, retained negligent Defendant Stockton employees after learning of the assailant's dangerous conduct and lack of ability to protect the Stockton student body.

174. Defendant Stockton University and Defendants Stockton Employees did not take appropriate action to prevent harm to student body and others, such as the plaintiff K.H.

175. As a result, Stockton University and Defendant Stockton Employees facilitated assailants predatory and harassing behavior.

176. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will

suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

177. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining their employees after learning of assailants dangerous propensities.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual

assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-SEVEN
### VICARIOUS LIABILITY

178. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

179. At all times relevant, Stockton University and Stockton Employees were present on or about Stockton University's campus and allowed underage drinking and sexual assaults to occur.

180. Defendant Stockton University, Defendants Stockton Employees as an employer, hired Stockton Employees to perform services in the affairs of Stockton University and who with respect to the physical conduct in the performance of the services is subject to Stockton University, Defendants Stockton Employees control or right to control.

181. Defendant Stockton University, Defendants Stockton Employees exercised control over the details of the work, by which the distinct business all Defendants were engaged in, holding them

vicariously liable for the Defendant Employees' failure to protect the Stockton University student body.

182. Defendants Stockton University, Defendants Stockton Employees did not take appropriate action to prevent harm to others, such as the plaintiff, K.H.

183. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

184. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be

caused great harm to plaintiff by retaining employees Defendant Stockton Employees is therefore vicariously liable for their actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-EIGHT
### RESPONDEAT SUPERIOR

185. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

186. At all relevant times, all defendant employees of Stockton University, were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

187. As a result, Stockton University and Defendants Stockton Employees facilitated, allowed, and arranged assailant's predatory behavior.

188. Consequently, Stockton University is liable under the doctrine of respondeat superior for their tortious actions of its employees.

   WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-NINE
### RATIFICATION

189. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

190. Defendants Stockton Employees were agents, directors, and employees of Stockton University.

191. At the time of the acts stated in the Complaint, there was an actual or assumed agency relationship between Defendants Stockton Employees and Stockton University.

192. All acts or omissions alleged of assailants were ratified by Stockton University. Stockton University had investigated or knew of the deviant acts of assailants and Stockton University's, employees, managers, supervisors, executives, and directors were informed of the sexual assault of K.H. by assailants. Stockton University refused to take any action to stop the sexual harassment and assaults occurring on Stockton University's campus.

193. Moreover, Stockton University's managers, supervisors, executives, and directors hid this information.

194. Despite knowledge of assailants' sexual misconduct, no disciplinary action was taken to deter or prevent this type of

misconduct that was known of occurring throughout the Stockton University campus.

195. As a result, Stockton University, Defendants Stockton Employees facilitated assailants' behavior.

196. Stockton University is thus responsible for assailants acts of assault, battery, sexual abuse, false imprisonment, invasion of privacy, and intentional or negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

<u>COUNT THIRTY</u>
<u>FAILURE TO WARN/MISREPRESENTATION</u>

197. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

198. Defendant Stockton University, failed to do their due diligence, which would have revealed the Stockton student body information about the dangers of underage drinking, drug usage, and sexual misconduct.

199. Defendant Stockton University, failed to take even minimal efforts to determine whether assailants were a threat to the student body and protect against it.

200. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily

activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

201. Stockton University after learning of assailants dangerous propensities and failing to warn the plaintiff is therefore vicariously liable for assailant's actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT THIRTY-ONE
### NEGLIGENCE

202. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

203. Defendant Stockton University owed a duty of a reasonable care to K.H. to exercise reasonable care in providing of proper accommodations and bodily safety for K.H. on Stockton's campus.

204. Defendant Stockton University did not conduct itself as a reasonably careful person would under like circumstances and caused or allowed to be caused great harm to plaintiff. Defendant Stockton University had a heightened duty of care to K.H. because of the inherent risk and prior history of sexual assaults that was already made known to Stockton University.

205. Defendant Stockton University breached their legal duty to K.H. and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

206. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to K.H.

   WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT THIRTY-TWO**
**GROSS NEGLIGENCE**

207. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

208. Defendant Stockton University owed a heightened duty to K.H. to exercise reasonable care in providing of proper accommodations and bodily safety for K.H. on Stockton's campus.

209. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff. Defendant Stockton University

had a heightened duty of care to K.H. because of the inherent risk and prior history of sexual assaults that was already made known to Stockton University.

210. Defendant Stockton University breached their legal duty to K.H. and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

211. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to K.H.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT THIRTY-THREE
### WILLFUL, WANTON, RECKLESS CONDUCT

212. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

213. Defendant Stockton University owed a heightened duty to K.H. to exercise reasonable care in providing of proper accommodations and bodily safety for K.H. on Stockton's campus.

214. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff. Defendant Stockton University had a heightened duty of care to K.H. because of the inherent risk and prior history of sexual assaults that was already made known to Stockton University.

215. Defendant Stockton University breached their legal duty to K.H. and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

216. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to K.H.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in

response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT THIRTY-FOUR
### PUNITIVE DAMAGES

217. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

218. The New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, punitive damages may be awarded to the plaintiff only if he or she proves, by clear and convincing evidence that the harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns Defendants, all, individually and jointly, acted with malice, fraud, wantonness, oppression, and willful misconduct, with the specific intent to cause harm.

219. The Defendants' conduct had a very serious likelihood that serious harm would arise.

220. The Defendants had awareness, careless, negligent, or reckless disregard of the likelihood that such serious harm would arise from his conduct.

221. The harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns, alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

222. The aforementioned conduct of Defendants is so outrageous in character, and so extreme in degree to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, thereby rising to the level of willful, wanton, knowing, and intentional misconduct under the Punitive Damages Act.

223. Defendant Stockton University had no proper implementation of a functional sexual abuse policy to protect students in place at the time of abuse.

224. Even if Stockton University did have a token policy in place, it is clear based on the events of the case that it was not enforced or taught properly and supported with adequate training courses which is equal to not having a policy at all.

225. The lack of a policy is evident by the reported incidents to Stockton police of sexual assaults on and off campus to the Stockton campus with Stockton students.

226. As a direct and proximate result of the intentional, extreme and outrageous conduct of Defendants, plaintiff was caused to sustain serious, life threatening, permanent physical injuries.

227. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

228. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining Stockton Employees who had learned of the dangerous propensities associated with the sexual assaults and failed to warn the plaintiff, and is therefore vicariously liable for assailants actions against the plaintiff.

## COUNT THIRTY-FIVE
### DELAYED DISCOVERY – EQUITABLE ESTOPPEL

229. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

230. Plaintiff pleads delayed discovery and/or repressed memory of the harm and thus a delay in the accrual of her claims against all parties. Plaintiff contends that the Statute of Limitations shall be tolled in accordance with the laws of the State of New Jersey, including, but not limited to, N.J.S.A. 2A:61B-1, et seq., (reasonable discovery of the injury and its causal relationship to the act of sexual abuse hereinafter referred to as "delayed discovery"), and/or N.J.S.A. 2A:14-21, et seq., (mental state, insanity, insanity and/or lacking the ability and/or capacity due to mental infliction, to pursue Plaintiffs' lawful rights), and/or duress, and/or equitable grounds.

231. Plaintiff had no notice or information of circumstances to put her on inquiry notice of the identity of all defendants named meaning their "sameness and oneness" in conjunction with the sexual abuse perpetrated by Defendants.

232. Plaintiff had not factually ascertained, nor could she have reasonably ascertained, suspected or comprehended the identity of all defendants as tortfeasors or corporate defendants which were in any way responsible for the alleged negligent, reckless, and/or purposeful human behavior manifested as sexual harassment and abuse by assailants and Pi Kappa Phi.

233. Plaintiff had not factually ascertained, or suspected, nor could she have reasonably ascertained the actual or appreciable harm to her, constituting an indispensable element of any cause of action against all defendants related to the alleged negligent, reckless, and/or purposeful human behavior manifested as sexual abuse by assailants and Pi Kappa Phi.

234. Plaintiff reasonably had no awareness that all defendants in any capacity, were potential tortfeasors, at any time and therefore, had no incentive to sue all defendants named because of assailants and Pi Kappa Phi's abuse and exploitation of plaintiff K.H.

235. As a result of the acts perpetrated by Defendants against plaintiff, plaintiff became, at the time of the sexual abuse, and thereafter, chronically depressed, fearful, worried, guilt-

ridden, and shameful, and did not contemplate all defendants named as tortfeasors.

236. Plaintiff was not at fault for lack of due diligence, or otherwise, for failing to discover that all defendants named failed to properly supervise and failed to take proper action relative to the behavior of assailants and Pi Kappa Phi fraternity.

237. All defendants are equitably estopped from asserting a statutory defense against plaintiff since the Statute of Limitations for negligence and all other torts only began to run at the time of reasonable discovery.

238. At no time did plaintiff have actual or presumptive knowledge or suspicion of any facts sufficient to put her on notice that all defendants had engaged in acts or conduct or failed to properly conduct themselves so as to cause permanent serious physical and mental injury to plaintiff.

239. Defendant Stockton University failing to supervise, monitor, suspend and/or expel assailants and members of Pi Kappa Phi fraternity in light of the notice of inappropriate conduct.

240. All defendants further breached their fiduciary duty to plaintiff to provide her a safe haven, by failing to take any action upon notice, constructive or otherwise, of Pi Kappa Phi and assailants conduct, as alleged in all counts of this complaint.

241. Had all defendants, adequately performed their duties to properly employ, monitor, and supervise assailants, plaintiff would not have been subject to all, or some, of the sexually inappropriate conduct of assailants as alleged in this complaint.

242. As a direct and proximate result of the conduct described herein above, plaintiff has suffered physical injury; severe emotional distress; diminished enjoyment of life; diminished enjoyment of childhood; difficulty and an inability to focus; difficulty and an inability to perform educational tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; is and has not engaged in normal development and activities; suffers from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in his full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, making it difficult to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

243. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical

injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT THIRTY-SIX
VIOLATION OF N.J.S.A. §2C:33-17 BY DEFENDANTS PI KAPPA PHI NATIONAL FRATERNITY, PI KAPPA PHI STOCKTON CHAPTER (ZETA KAPPA), ZACHARY MADLE, JASON SOTO, YIN BEN TOMM, AND AMY TOMM FOR THE SERVING OF ALCOHOL TO UNDERAGE PERSONS.

244. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

245. At all times relevant hereto, Defendant Pi Kappa Phi was a corporation authorized to do business in the State of New Jersey, owned, operated, controlled and maintained the premises at 600 W. White Horse Pike, Egg Harbor City, New Jersey 08215 commonly known as "Pi Kappa Phi Fraternity House" and was used to host Pi Kappa Phi parties which served alcohol regularly.

246. At all times relevant hereto, Yin Ben Tomm and Amy Tomm owned, operated, controlled and maintained the premises at 600 W. White Horse Pike, Egg Harbor City, New Jersey 08215 commonly known as

"Pi Kappa Phi Fraternity House" and was used to host Pi Kappa Phi parties which served alcohol regularly.

247. The Plaintiff K.H., was a patron of the premises of Defendants, Pi Kappa Phi, Yin Ben Tomm and Amy Tomm.

248. At all times relevant hereto, Defendants, Pi Kappa Phi, Yin Ben Tomm and Amy Tomm had a non-delegable duty to act within a degree of care for the protection, safety, security and well-being of its patrons.

249. On or about December 9, 2012, Pi Kappa Phi, Yin Ben Tomm and Amy Tomm failed to use that degree of care, and negligently continued to serve Plaintiff, K.H., with alcoholic beverages while he was visibly intoxicated.

250. Plaintiff K.H. as a direct and proximate cause of Defendants Pi Kappa Phi, Yin Ben Tomm and Amy Tomm, K.H. was served alcohol while underage along with numerous others.

251. As a direct and proximate result of the negligence of the Defendants Pi Kappa Phi, Yin Ben Tomm and Amy Tomm, Defendant was sexually assaulted by a fellow party attendee who was also underage and intoxicated.

252. Plaintiff K.H., was caused to sustain serious and permanent physical injury; severe emotional distress; diminished enjoyment of life; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; significant expenses for medical care and treatment, is and has been unable to live a normal

life; is and has been unable to engage in normal activities; will in the future be caused to endure severe pain in mind and body; will in the future be prevented from engaging in his normal daily activities; will in the future be caused to incur significant expenses for medical care and treatment; and was and will in the future be caused to sustain other great losses.

**WHEREFORE**, Plaintiff K.H. hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the court or jury may deem proper.

### COUNT THIRTY-SEVEN
### FICTITIOUS PARTIES

253. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

254. JANE AND JOHN DOES (1-20) (Fictitious Individuals) and ABC CORPORATIONS (A-Z) (Fictitious Entities); are fictitious names for persons or entities which have not yet been identified but whose identities will be supplemented when ascertained by the plaintiff.

255. Said defendants may have played a role in the harm suffered by plaintiff.

256. Plaintiffs hereby reserve their right to amend the Complaint as a result of pleading such fictitious parties.

257. John and Jane Does (1-20) and ABC Corporations (A-Z) are individuals who may have taken action or inaction that resulted in harm against the Plaintiff but as are yet unknown or not yet necessarily germane to the allegations alleged in the complaint.

258. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT THIRTY-EIGHT**
**CIVIL CONSPIRACY OF STOCKTON EMPLOYEES, ITS MEMBERS AND ASSOCIATES, AND STOCKTON UNIVERSITY**

259. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

260. Stockton Employees and its members and associates entered into an agreement with other members for the purpose of concealing the sexual assault of K.H., the Stockton Employees agreed to do so, thereby putting Plaintiff in severe physical and personal harm.

261. Defendant Stockton University Employees, and John Does 1-20 took steps to further conspire to sexually assault K.H., and protect the assailants by concealing the allegations of sexual assault undermining the integrity of the Title IX hearing.

262. Defendants did in fact commit the above acts against Plaintiff.

263. In furtherance of said conspiracy with each other Defendants and John Does 1-20 committed these tortuous acts.

264. Above Defendants were acting in the course of their agency relationship as Stockton Employees when said tortuous acts were committed.

265. In furtherance of the authority given to them by Defendant Stockton University, the University employees used their position of power to suppress and under-report the sexual assault of K.H. by assailants in direct violation of Federal statutory regulations.

266. Plaintiff suffered substantial harm because of the civil conspiracy by Defendant Stockton Employees, its members, and associates.

267. Defendants are directly and collectively liable for the aforementioned actions of the members/associates of Stockton Employees and Defendants are directly and vicariously liable for the aforesaid acts of its members and associates.

268. As a direct and proximate result of the Defendants' civil conspiracy the Plaintiff has and will continue to suffer

physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. For all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For liquidated damages;

6. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. §2000e-5(k), New Jersey Revised Statutes §10:5-27.1, and other laws; and

9. For such other and further relief as this Court deems just and proper.


FUGGI LAW FIRM, P.C.


ROBERT R. FUGGI, JR., ESQ.

DATE:

## JURY DEMAND

Plaintiff hereby demands a trial by a jury on all of the issues contained herein.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DESIGNATION OF TRIAL COUNSEL

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## PLAINTIFF'S DEMAND FOR DAMAGES

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of trial.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

103

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or arbitration proceeding and plaintiff does not contemplate any other action or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiff(s) hereby make(s) demand for fully responsive answers to New Jersey Court Rules Appendix II, Form C answers within sixty (60) days of the date of service of this Complaint.

In answering, please consider the events alleged in this Complaint as the accident or occurrence and to which such questions relate. Please give specific information in your answers and not merely references to medical, police or other records or reports.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

104

## NOTICE TO PRODUCE

Pursuant to the Rules of Court, the undersigned requests that you produce the following documents and other items for inspection and copying at the offices of FUGGI LAW FIRM, P.C. 47 Main Street, Toms River, New Jersey 08753, within 30 days. You may comply with this request by mailing legible copies of the documents.

1. All written statements made and/or signed by any party Defendant or their agent, servant or employee, relative to reports made to any Defendant(s) their agent(s), servant(s) or employee(s) relative to any act or behavior of Defendants involving harassment, assault and intention infliction of emotional distress.

2. All written statements made and/or signed by the party serving this request or by any agent or employee of the party serving this request.

3. All written evidence of any oral statements made by the party serving this request or by any agent or employee of the party serving this request.

4. All charts, drawings, illustrations, diagrams, and other documents that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

5. All records pertaining to any tests, inspections and examinations performed with respect to any object, thing, or substance relevant to this action. This refers to tests and examinations performed by persons other than you, your attorneys, or anyone acting on your behalf.

6. All documents that you or your attorneys supplied to any experts who will be called as witnesses on your behalf at the trial of this action.

7. All videos and films that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

8. The written reports of all experts who you or your attorneys intend to call as witnesses on your behalf at the trial of this action.

9. Copies of any and all Complaints filed in this State or any other against any of the Defendants arising out of allegations of assault, general negligence, or intentional infliction of emotional distress.

10. All police reports relative to any action or behavior engaged in by Defendant or any Defendant, their agent servant or employee, from date of hiring to present.

11. All interrogatories, and Notices to Produce previously answered by you in this action. All depositions noticed by you or taken of you.

FUGGI LAW FIRM, P.C.


ROBERT R. FUGGI, JR., ESQ.